IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


DANIEL G. DAVISON,

                              Plaintiff,            Case No. 3:07 CV 424

        -vs-
                                                    <u>MEMORANDUM   OPINION</u>

ROADWAY EXPRESS, INC.,

                              Defendant.

KATZ, J.

        This matter is before the Court on Defendant Roadway Express, Inc.'s motion for

summary judgment (Doc. 37), Plaintiff Daniel Davison's response (Doc. 41), and reply (Doc. 44)

and surreply (Doc. 47) briefs.

**I. Background**

        Plaintiff was a line haul driver out of Defendant's Toledo, Ohio facility from

approximately May 1995 until August 22, 2006.  At all times, Plaintiff was represented by

Teamsters Local 20, and the terms and conditions of his employment were governed by the

Teamster's National Master Freight Agreement, the Central Region Over-the-Road Motor Freight

Supplemental Agreement, and the Ohio Addendum (collectively, "the CBAs").  The CBAs do not

allow the employer to discharge an employee for absence due to a work-related injury.  Workers

are protected extensively, except in certain circumstances, such as in the event of just cause

termination or a voluntary quit.  A "Leave of Absence" provision provides for leave in ninety day

increments with the written permission of the company and the Union, including leave for

inability to work due to proven sickness or injury.  A "Health and Welfare Benefits" provision

provides for twelve months of paid health and welfare benefits to employees who are off work due to work-related injury.  The provisions require an employee missing work to provide the employer with adequate notice of the need for leave and for any extensions of leave.  Another provision provides that an employee is considered to have voluntarily quit his or her employment if he or she fails to report for three consecutive working days without notifying the company.

A "Family and Medical Leave Act" provision guarantees that, at a minimum, employees will receive all leave guaranteed by the Family Medical Leave Act ("FMLA").  The provision explains the FMLA requirements and states that Roadway will not discipline employees for seeking or taking FMLA leave.  It also states that all disputes arising under it shall be subject to the CBAs' grievance procedure.  A "Worker's Compensation" provision in the CBAs likewise prohibits discipline of an employee for filing an on-the-job injury report, and states that disputes arising thereunder shall be submitted to the Joint Area Committee.

Plaintiff injured his back in an on-the-job truck accident on or about July 15, 2006.  His supervisor Ronald Nietz accompanied Davison to the hospital and excused him from work for the following day.  On July 17, Plaintiff saw Dr. Jerry Dombeck, a chiropractor, who issued documentation declaring Plaintiff unable to work through August 1, 2006, with an estimated return to work date of August 2, 2006.  Plaintiff filled out a Physician's Report of Work Ability, which Dr. Dombeck signed and faxed to Roadway.  Roadway granted Davison leave through August 1, 2006.  Around that time, Dr. Dombeck also provided Defendant with the paperwork necessary for Plaintiff to receive worker's compensation benefits.  Plaintiff was approved for worker's compensation a few weeks later, on August 15, 2007.

On July 31, 2006, Dr. Dombeck approved an extension of Plaintiff's leave until August 16, 2006.  Dr. Dombeck's office apparently claimed to have faxed the extension to Defendant.  However, on August 4, 2006, Nietz sent Plaintiff a letter requesting Davison contact the company within 72 hours because Defendant had no medical approval excusing his absence beyond August 1, 2006.  Davison contacted Roadway to find out what to do.  Roadway claimed not to have received a fax from Dr. Dombeck.  Plaintiff then called Dr. Dombeck's office and requested that the office keep Roadway informed of his condition and work status.  Dr. Dombeck's office agreed to do so, and subsequently faxed Nietz the approval of extension of leave until August 16.

On August 14 or 16, 2006, Dr. Dombeck extended Davison's leave until September 16, 2006.  Plaintiff alleges that Dr. Dombeck assured Plaintiff that his office faxed the necessary information to Roadway.  Plaintiff did not contact Roadway or his worker's compensation administrator Ghallagher Bassett regarding the renewed approval.  Defendant Roadway claims that it did not receive the information from Dr. Dombeck at that time.  Plaintiff has produced notes from Dr. Dombeck's office that appear to indicate that the office faxed the completed forms on August 16 and 22, 2006, but Plaintiff has been unable to produce the faxes themselves.  On August 17 or 18, 2006, Roadway contacted Davison to inform him that there was a problem with his worker's compensation paperwork.  Davison informed the caller that worker's compensation problems should be referred to his attorney.  Defendant characterizes Plaintiff's response as stubborn and flippant.  There is no evidence that Roadway attempted to contact Davison's attorney at that point.  Other Roadway representatives attempted to contact Davison - Plaintiff recalls one additional phone call, from Mindy Egan, but Defendant claims others called.  Roadway

3

also contacted Plaintiff's worker's compensation administrator, who Defendant claims also tried to contact Plaintiff.

On August 22, 2006, Nietz sent a letter to Davison explaining that, due to his absence beyond the three days prescribed by the CBAs, Roadway considered Davison to have voluntarily quit his employment.  Upon receiving the letter, Plaintiff contacted Dr. Dombeck, who assured Plaintiff that the information had been faxed.  Roadway states that on August 24, Ghallagher Bassett received faxed information from Dr. Dombeck extending Plaintiff's leave through September 15, 2006.

Dr. Dombeck's notes of August 14, 2006 read: "No change for this condition as of yet.  Relief of condition has only been temporary thus far.  Suspected disc herniation of lumbar spine. . . . Patient is estimated to return to work on 8/16/06 however it looks as though this might be extended."  Doc. 37-7, Ex. E at 18.  The August 16 notes indicate slight improvement, continued treatment, and that "[a] C84 was signed today with estimated return to work on 9/16/06."  Doc. 37-7, Ex. E at 17.  The August 18 notes indicate "[n]o change from last visit."  Doc. 37-7, Ex. E at 16.  The August 22 notes from Dr. Dombeck's office state: "Estimated return to work 9/16/06. . . . [Defendant] claims to have not received C84 with [return to work] date 9/16/06.  Faxed this information to [Defendant] today."  Doc. 37-7, Ex. E at 15.  The notes from August 25, 2006 state:

> Patient[']s return to work estimation is 9/16/06.  This is indicated on C84's sent to Gallagher Bassett, Roadway, [and Roadway employees] Ron [Nietz], Lois [Mason-Williams], and Trevor [Van Berkom].  Apparently Roadway is stating they have not received any information from this office or the patient[']s attorney and they are using this against the patient to terminate his employment.  We are giving the patient copies of all records faxed to appropriate parties.

Doc. 37-7, Ex. E at 13.  Notes from August 28 state that "C84 estimated [return to work] is 9/16/06. [Dr. Dombeck] tried contacting Gallagher Bassett on Friday however Mindy Egan is not

4

available until Tuesday.  I will be expecting a call from her on Tuesday."  Doc. 37-7, Ex. E at 12.

Notes indicate that Dr. Dombeck had not heard from Ghallagher Bassett as late as September 5,

2006.

Plaintiff filed a grievance with the Union on August 24, 2006.  Roadway held a hearing

and denied the grievance.  Plaintiff appealed to the Ohio Joint Session, which held a hearing on

October 18, 2006 and upheld the denial.  Plaintiff was also denied state unemployment

compensation because he was considered to have voluntarily quit his job.  He filed this suit on

February 15, 2007.

## II. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial responsibility of "informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating

the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.*

at 323-25.  Once the movant meets this burden, the opposing party "must set forth specific facts

showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. Discussion

Plaintiff claims interference with his FMLA rights and retaliation for filing a worker's compensation claim.  Defendant has moved for summary judgment on both claims.  A preliminary issue, however, is whether the CBAs' grievance procedure was the exclusive remedy available to Plaintiff.

### A. Union Grievance Procedure

In 1974, the Supreme Court noted that "an individual does not forfeit his private cause of action [for a claimed Title VIII violation] if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974).  The *Gardner-Denver* Court approved the right of "an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." *Id.* at 59-60.  In 1998, the Court noted that, "at least," *Gardner-Denver* still stood for the proposition that waiver of an employee's right to bring judicial action contained in a collective bargaining agreement must be "clear and unmistakable." *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 80 (1998).[1]

Other district courts have found that FMLA cases may proceed despite the waiver provisions of a collective bargaining agreement.  *See Shtab v. Greate Bay Hotel & Casino, Inc.*, 173 F.Supp. 2d 255 (D.N.J. 2001); *Joostberns v. United Parcel Service, Inc.*, Case No. 5:03-CV-

---

[1] The Supreme Court has granted certiorari in *14 Penn Plaza LLC v. Pyett*, Case No. 07-581, to consider the question: "Is an arbitration clause contained in a collective bargaining agreement, freely negotiated by a union and an employer, which clearly and unmistakably waives the union members' right to a judicial forum for their statutory discrimination claims, enforceable?" *See* Supreme Court Website Docket for Case No. 07-581, available at http://www.supremecourtus.gov/docket/07-581.htm.

7

108, 2004 U.S. Dist. LEXIS 28332 (W.D. Mich. Oct. 6, 2004); *O'Hara v. Mt. Vernon Board of Education*, 16 F.Supp. 2d 868 (S.D. Ohio 1998).

The Sixth Circuit has ruled that a district court can hear an employment discrimination case brought by an employee covered by a collective bargaining agreement with a mandatory arbitration clause. *Bratten v. SSI Services, Inc*., 185 F.3d 625, 630 (6th Cir. 1999). In *Bratten*, the court allowed a claim under the Americans with Disability Act to proceed despite the presence of a provision in the collective bargaining agreement obligating the employer to refrain from disability discrimination. The Sixth Circuit noted, first, that the collective bargaining agreement prohibited disability discrimination in the context of Title VII, which is similar but may vary from the ADA's prohibition. Second, the section of the agreement that waived statutory claims was "a wholly separate provision from the grievance resolution procedure. . . ." *Id*. at 631-32. The waiver therefore was not "clear and unmistakable."

The Court sees no reason to depart from the decisions of the other district courts cited above, that the CBAs do not preclude a judicial remedy under the FMLA. Even if this Court does not adopt such a broad holding, however, Plaintiff's FMLA claims may still proceed under the Sixth Circuit's *Bratten* rationale. A major deficiency in the *Bratten* agreement was that the statutory waiver and grievance procedure provisions were completely separate. In the CBAs before this Court, at least the same is true. At most, Defendants have not even pointed the Court to an explicit statutory waiver provision that can be read in direct connection with the grievance procedure section. Even the FMLA section (Article 38, Section 3, on page 138) and the grievance procedure section (Article 8, on page 34) are far apart and lack any explicit statutory waiver connection. In fact, the latter far from prohibits judicial action - it anticipates it: "If the Employer

8

or Union challenges in court a decision issued by any dispute resolution panel . . . the cost of the challenge, including court costs and attorney's fees, shall be paid by the losing party."  The CBAs are therefore not "clear and unmistakable" with regard to a waiver of judicial FMLA rights, and this Court maintains jurisdiction to hear Plaintiff's FMLA claims.

### B. Count 1: Interference with FMLA Rights

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act]." 29 U.S.C. § 2615(a)(1).  An employee may bring a retaliation case or an interference case.  To prevail on an interference claim, "a plaintiff must establish that (1) he is an 'eligible employee,' 29 U.S.C. § 2611(2); (2) the defendant is an 'employer,' 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

### 1. Genuine Issue of Material Fact Exists as to Fourth Prong - Notice

The bulk of Defendant's argument is that Plaintiff failed to meet the fourth prong with regard to the extension of his leave after August 15, 2006 until September 16, 2006.  While other points are argued, most are basically rooted in the fundamental disagreement between the parties regarding whether Plaintiff provided notice for that second leave extension.  Had there not been this lapse in communication, Roadway suggests it probably would have accepted the extension pursuant to the CBAs, and this dispute may well have been averted.  Def.'s Memo., Doc. 37 at 13.

9

First, Defendant makes much of the fact that Plaintiff himself did not contact Roadway regarding the extension.  The FMLA allows third person notification of an employee's inability to work.  *Rodriguez v. Ford Motor Co.*, 382 F.Supp. 2d 928, 934 (E.D. Mich. 2005).  Furthermore, regulations provide the following:

> The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means. Notice may be given by the employee's spokesperson (e.g., spouse, adult family member or other responsible party) if the employee is unable to do so personally. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303(b).  Roadway notes that Davison advised a caller to contact Davison's attorney, but there is no evidence that Roadway made such an attempt, a reasonable one in light of the alleged difficulty of establishing communication.  Defendant further insists that Plaintiff has produced no evidence that there was any communication between Dr. Dombeck and Defendant regarding the second leave extension.  However, Plaintiff has produced the notes from Dr. Dombeck's office, as cited above, and Defendant has not contested their authenticity or relevance.  Those notes alone, even if no actual facsimile has been produced by either party during discovery, constitute enough evidentiary support to raise a genuine issue of material fact as to whether Plaintiff, via Dr. Dombeck, made reasonable efforts to establish communication regarding the extension of leave until September 16.  Therefore, summary judgment cannot be granted.

Defendant argues that Plaintiff should have called personally, as he was instructed to do after the miscommunication surrounding the first leave extension.  However, Defendant was also aware, based on that first extension, that information was at least as likely to be communicated by

10

Dr. Dombeck's office as by Plaintiff personally.  Yet Defendant did not attempt to contact Dr. Dombeck's office, even though they had previously communicated to resolve the first extension situation.

### 2. Third Prong: Plaintiff Had Qualifying Serious Health Condition

Defendant argues that, even if there was notice of his second leave extension, Plaintiff has not shown that he had a qualifying "serious health condition" under the FMLA, and therefore he was not "entitled to leave" under the third prong of the interference test.

The FMLA permits qualifying employees to take twelve weeks of unpaid leave each year if, among other things, the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the the the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  The employer may require an employee to provide a doctor's certification confirming the existence of a serious health condition.  29 U.S.C. § 2613(a).  A doctor's certification of a serious health condition is sufficient if it states (1) the date on which the serious health condition began, (2) the probable duration of the condition, (3) the appropriate medical facts within the health care provider's knowledge, and (4) a statement that the employee is unable to perform her job duties. *Brenneman v. MedCentral Health System*, 366 F.3d 412, 422 (6th Cir. 2004) (*citing* 29 U.S.C. § 2613(b)). While "the medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider," the employer may overcome this presumption by showing that "the certification is invalid or

11

inauthentic." *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F.Supp.2d 944, 955-56 (S.D. Ohio 2005) (citing 29 C.F.R. § 825.307(a)).  *See Novak v. MetroHealth Medical Center*, 503 F.3d 572, 577-78 (6th Cir. 2007).

The Sixth Circuit has "recognized that an employer who finds an employee's certification to be 'incomplete' [or possibly, 'inadequate'] has a duty to inform the employee of the deficiency and provide the employee a 'reasonable opportunity' to cure it."  *Id*. at 579 (citing *Sorrell v. Rinker Materials Corp*., 395 F.3d 332, 337 (6th Cir. 2005) (*citing* 29 C.F.R. § 825.305(d)); *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005) (*citing* 29 C.F.R. § 825.305(d))).

Roadway has not asserted that it ever questioned Davison's health condition until this litigation.  Roadway provided leave, pursuant to the CBAs, upon receipt of faxes from Dr. Dombeck.  Roadway even admits, as noted previously, that it would have granted leave had it been aware of Dr. Dombeck's extension of leave to September 16 pursuant to faxes similar to those it had approved previously.  Even assuming Roadway rightly questioned Davison's health condition with regard to the second extension, Roadway has not asserted that it contacted Dr. Dombeck or that it followed Davison's request that they contact his attorney if there was a problem with his paperwork.  As such, the Court cannot consider Roadway to have provided a reasonable opportunity for Davison, his attorney, or his treating doctor to cure the alleged deficiency in his paperwork with regard to whether he had a qualifying serious health condition.

Even so, Defendant maintains that Plaintiff fails to meet the definition of a serious health condition because the records do not indicate that he was treated by a qualified health care provider in Dr. Dombeck.  Specifically, Defendant points to 29 C.F.R. § 825.118(b)(1), which

12

qualifies licensed chiropractors as "health care providers" for purposes of the FMLA if their treatment consists of "manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist."

Defendant cites *Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159 (N.D. Ohio 1997) for support of its position that Dr. Dombeck was not a qualified health care provider. In *Olsen*, the court found the chiropractor was not qualified. In that case, in addition to there being no evidence of manual manipulation of the plaintiff's spine, an x-ray was not taken until after treatment began, the x-ray revealed no abnormalities, and, despite the plaintiff having also moved for summary judgment, the only evidence was the plaintiff's own testimony. In *Pinson v. Berkley Medical Resources, Inc.*, 2005 WL 3210950 (W.D. Pa. 2005), the court denied the defendant's motion for summary judgment on the plaintiff's FMLA claim. The court distinguished *Olsen* because the plaintiff "presented substantially more than her own testimony regarding the nature of her neck and back condition," including "a number of notes from [the chiropractor] excusing [the plaintiff] from work because of treatment," the chiropractor's testimony that he made semiweekly treatments of various methods, and testimony that the plaintiff's condition had not fully improved and was still subject to flare-ups. *Pinson*, 2205 WL at *16. The plaintiff thereby "established a material issue of fact as to whether her condition was 'a serious health condition involving continuing treatment by a health care provider,' entitling her to leave under the FMLA." *Id.*

In the case before this Court, Dr. Dombeck was not deposed. However, as described above, an abundance of daily notes indicate that Davison received treatment three times a week, with less improvement than originally anticipated and occasional flare-ups. Davison has demonstrated that he had x-rays taken upon his initial trip to the hospital after the accident, in the

presence of Nietz.  Plaintiff testified that the x-rays were given to Dr. Dombeck, and that treatment included realignment of Plaintiff's back.  The evidence here is significantly greater than the evidence presented in *Olsen*, and constitutes enough of a genuine issue of material fact to survive summary judgment.

### C. Count 2: Retaliation in Violation of Ohio Workers' Compensation Act

Plaintiff has alleged retaliation in violation of Ohio Rev. Code § 4123.90, which states:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

Under section 4123.90, an employer may not discharge an employee for filing a workers' compensation claim for an injury that occurred during the course of his employment with that employer. Ohio Rev. Code § 4123.90. Section 4123.90 does not, however, preclude employers from terminating employees for any lawful reason, including inability to do their jobs or absenteeism due to their workplace injury. *White v. Mt. Carmel Med. Ctr.*, 150 Ohio App.3d 316 (Ohio Ct. App. 2002); *cf. Coolidge v. Riverdale Local Sch. Dist.*, 100 Ohio St.3d 141 (Ohio 2003) (holding that employers who fire employees receiving temporary total disability for absenteeism or inability to work may violate Ohio public policy; failing to hold such conduct violates § 4123.90).

When there is no direct evidence showing that an employer terminated an employee specifically for filing a workers' compensation claim, the Court analyzes a § 4123.90 claim under a framework mirroring that of many other employment discrimination claims based on circumstantial evidence.  First, the Court must determine whether the employee has made out a

14

prima facie case by showing: (1) that he filed a workers' compensation claim for an injury incurred in the scope of his employment with the employer; (2) that he experienced an adverse employment action; and (3) that there was a causal connection between the filing of the claim and the adverse action. *White*, 150 Ohio App.3d at 328; *see Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984) (setting out the similar prima facie case for a claim of retaliation under Title VII of the Civil Rights Act of 1964). If the plaintiff meets that burden, the Court must determine whether the employer has articulated a legitimate, non-discriminatory reason for firing him. *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 697 N.E.2d 1080, 1083 (1997).

Where the defendant sets forth, through the introduction of admissible evidence, that the actions were taken for a legitimate nondiscriminatory reason, it becomes the plaintiff's burden to prove by a preponderance of the evidence that the reason was actually a pretext for discrimination. To establish pretext, a plaintiff may meet his or her burden by showing that the employer's proffered reason for adverse employment action: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Id.*; *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Though the burden of production shifts back and forth between employer and employee under this framework, the employee at all times bears the burden of proving the employer acted with retaliatory intent. *Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 727 N.E.2d 137, 140 (Ohio Ct. App. 1999).

> The factors that a trier of fact may consider in determining whether there was retaliation include: "punitive action such as bad performance reports after the ... claim was filed, the length of time between the claim and the discharge, changes in

salary level, hostile attitudes emerging, and whether legitimate reasons exist for the discharge."

*Boyd v. Winton Hills Med. & Health Ctr., Inc*., 133 Ohio App.3d 150, 727 N.E.2d 137, 140 (1999) (quoting *Anschutz v. Dresser Indus., Inc*., No. 3-90-8, 1991 WL 261828, 1991 Ohio App. LEXIS 6124 (Dec. 11, 1991)).

Defendant disputes any causal connection between Plaintiff's filing a worker's compensation claim and the end of his employment.  Courts may infer a causal connection based, at least in part, on the length of time between the claim and the termination of employment.  *Boyd*, supra.  Plaintiff points to the relatively short five-week period between his filing and his "voluntary quit" as well as a Roadway policy of rewarding supervisors based in part on low worker's compensation payouts to the employees they supervise.  Defendant disputes the presence of intentional retaliation, but the issue here is whether a causal connection may be inferred as part of a prima facie case based on indirect evidence.  Defendant notes that several weeks elapsed between the two occurrences without Defendant challenging Plaintiff's worker's compensation claim, and characterizes the policy that rewards supervisors for low worker's compensation payouts as a commendable pro-safety effort.  Defendant does not dispute that Nietz, as Davison's supervisor, would be evaluated in part on his ability to keep workers' compensation payments below a target number, or that bonuses are paid to employees who limit the number of worker's compensation payouts.  These factors, however effective they may be at limiting workplace injuries, do not favor Defendant's position.

In *Matricardi v. Astro Shapes, Inc.*, Case No. 4:04-CV-1317, 2007 WL 2902918 (N.D. Ohio Sept. 29, 2007), the court observed that "[g]enerally, the Sixth Circuit holds that a plaintiff may not present a prima facie retaliation case based solely on temporal proximity, especially when

16

a plaintiff's claim is otherwise weak." *Matricardi*, 2007 WL at \*14, citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) (citing *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986)) (a period of four months was not enough to establish a prima facie case where the plaintiff's case was otherwise weak and there was substantial evidence supporting the employer's position). "However, an exception to this general rule exists where the temporal proximity between the protected activity and the adverse employment action is 'acutely near in time,' and in such cases that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *Matricardi*, 2007 WL at \*14, citing *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) (three weeks between protected activity and adverse employment action constituted sufficient temporal proximity to raise an inference of causality) and *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001) (one month between request for FMLA leave and termination constituted sufficient temporal proximity to raise an inference of causality). In *Walton v. Nova Information Systems*, Case No. 3:06-CV-0292, 2008 WL 1751525 (E.D. Tenn. Apr. 11, 2008), the court found that an approximately one month period raised an inference of retaliatory motive.

In this case, approximately five weeks elapsed between the time when Plaintiff filed for worker's compensation and when the company voluntarily quit him. Five weeks is a relatively short period of time in light of the above cases, and gives rise to an inference of causality, especially when considered in light of Roadway's incentive program and the fact that Roadway did not attempt to contact Dr. Dombeck or, as Davison instructed, Plaintiff's worker's compensation attorney. Plaintiff has therefore established a prima facie case of retaliation in violation of Ohio Rev. Code § 4123.90.

**IV. Conclusion**

For the reasons discussed herein, Defendant's motion for summary judgment (Doc. 37) is hereby denied.

IT IS SO ORDERED.

_  s/ David A. Katz_____
DAVID A. KATZ
U. S. DISTRICT JUDGE